UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Laura L. Ledama, | Case No. 0:16-cv-03071-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy A. Berryhill, *Acting Commissioner of Social Security* | |
| Defendant. | |

Gregg B. Nelson, Nelson Law Office, 5758 Blackshire Path, Inver Grove Heights, MN 55076, Thomas A. Krause, Schott, Mauss & Associates, PLLC, 6611 University Avenue, Suite 200, Des Moines, IA 50324, counsel for Ms. Ledama

Pamela Marentette, United States Attorney's Office, 300 S 4th Street, Suite 600, Minneapolis, MN 55415, counsel for defendant

Plaintiff Laura Lee Ledama appeals the denial of her application for Social Security disability benefits, Compl. ECF No. 1, and the parties have filed cross motions for summary judgment. Pl.'s Mot., ECF No. 17; Def.'s Mot., ECF No. 20. Ms. Ledama asks the Court to reverse the Commissioner's decision and remand the matter "for the calculation and payment of benefits," or alternatively for further proceedings. Pl.'s Mem. at 21, ECF No. 18. The Commissioner asks that the Court affirm the Commissioner's decision as legally sound and supported by substantial evidence. Def.'s Mem. at 16, ECF No. 21. For the reasons that follow, Ms. Ledama's motion is denied, the Commissioner's motion is granted, and the Commissioner's decision is affirmed.

## I.   Background

On March 11, 2013, Ms. Ledama filed the application at issue in this matter. Pl.'s Mem. at 2. She applied for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Act, alleging disability with an onset date of June 9, 2012. *Id.* Ms. Ledama is

forty-four years old, and suffers from migraine headaches, chronic neck pain, ongoing degenerative disc disease of the cervical and lumbar spine, and "chronic pain syndrome versus fibromyalgia." Admin. R. ("AR") at 23, ECF No. 12.[1] Ms. Ledama worked as an administrative assistant from 2004 through 2011, and has also worked as a personal care assistant and a childcare provider. *Id.* at 281. In 2011, she took long-term disability, which ended in June 2012 when the insurance company determined she was no longer disabled. *Id.* at 77-78. Ms. Ledama previously applied for disability insurance benefits in 2010 alleging disability starting in 2009, but her application was denied initially, on reconsideration, after hearing by an administrative law judge ("ALJ"), and on appeal to the appeals council. *Id.* at 92, 111.

Ms. Ledama's March 2013 application—the one at issue here—was denied initially in August 2013 and on reconsideration in January 2014. *Id.* at 117-138, 141-168. Ms. Ledama requested a hearing in the matter, and an ALJ conducted such a hearing in February 2015. *Id.* at 187-88, 72-87. At the hearing, the ALJ heard testimony from Ms. Ledama and from an impartial vocational expert. *Id.* at 72-87. The ALJ affirmed the denial of benefits in a detailed decision issued later that month. *Id.* at 24-44.

In that decision, the ALJ followed the well-known sequential process for considering claims for DIB and SSI. 20 C.F.R. §§ 404.1520(a), 416.920 (a). The ALJ found that:

(1) Ms. Ledama had not engaged in substantial gainful activity since June 9, 2012;

(2) Ms. Ledama has severe physical impairments that would affect her ability to work;

(3) Ms. Ledama's impairments do not meet or medically equal the "listings" set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1;

(4) Ms. Ledama's impairments necessitate some limitations on her work, but Ms. Ledama has the residual functional capacity ("RFC") to perform light work; and

---

[1] In citations to the AR in this Order, the page number given refers to the PDF pagination rather than that marked on the AR pages.

(5) With the prescribed limitations, Ms. Ledama would still be capable of performing her past work as an administrative assistant or childcare worker.

*See* AR at 29-42. The ALJ's decision became the final decision of the Commissioner after the appeals council denied Ms. Ledama's request for review in May 2016. *Id.* at 10-14. She filed the complaint in the instant matter the following September, and the matter is now before the Court for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl.

## II. Legal Standard

The Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g), and the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This review is deferential, *see Kelley v. Barnhart*, 372 F.3d 958, 960 (8th Cir. 2004), and is "limited to determining whether there is substantial evidence based on the entire record to support the ALJ's factual findings, and whether [the] decision was based on legal error." *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996); *see also Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006); *Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). Where substantial evidence supports the Commissioner's findings, the Court should not reverse those findings merely because other evidence exists in the record to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994).

## III. Analysis

In support of her motion, Ms. Ledama argues that the ALJ inadequately considered her fibromyalgia in determining her RFC and that he improperly weighed the opinions of two medical sources. Pl.'s Mem. at 11-20. The Commissioner responds that the ALJ adequately considered and appropriately discounted the opinions of those two medical sources and that the ALJ properly evaluated Ms. Ledama's fibromyalgia diagnosis. Def.'s Mem. at 5-15.

### A. Fibromyalgia Diagnosis

Ms. Ledama asserts that the ALJ minimally discussed fibromyalgia and that he "all but dismisse[d] this impairment." Pl.'s Mem. at 13. She criticizes the "ALJ's focus on the ALJ's concept of 'objective' evidence," which she argues operated as requiring neurological or orthopedic findings, in contravention of the relevant social security ruling. *Id.* at 14; *see* SSR 12-2p, 2012 WL 3104869 (July 25, 2012) (setting forth guidelines for evaluation of fibromyalgia). She argues that the ALJ "failed to look at the relevant evidence and relied instead on irrelevant evidence." Pl.'s Mem. at 15. The Court disagrees. A close examination of the record and the ALJ's opinion demonstrates the flaws with this argument.

### Ruling 12-2p

Social Security Ruling 12-2p contains guidelines for evaluating fibromyalgia. 2012 WL 3104869. The Ruling notes that the first step is to determine whether the claimant's fibromyalgia constitutes a medically determinable impairment, and the ALJ here determined Ms. Ledama's condition met this standard. *See id.*, at *5; AR at 29. The second step is to "evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p, 2012 WL 3104869, at *5. The Ruling calls first for an examination of objective medical evidence. *Id.* Where such evidence

> does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id.* The ALJ applied this analysis, but Ms. Ledama argues that he did so incorrectly.

### The ALJ's Fibromyalgia Findings

The ALJ began his analysis of Ms. Ledama's RFC by acknowledging that "a claimant's symptoms can sometimes suggest a greater level of severity of impairment

-4-

than can be shown by the objective medical evidence alone." AR at 35. He then listed seven factors which contextualize the objective medical evidence to allow for a more broad understanding of a claimant's symptoms:

> 1. The claimant's daily activities;
>
> 2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms . . .; and
>
> 7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). The subsequent seven-page analysis thoroughly considered many of the above factors in tandem with objective medical evidence in the record. AR 35-42.

### The ALJ's Analysis Was Sound

Against the legal framework provided by the Ruling and the governing caselaw, the ALJ's analysis is neither factually nor legally erroneous. The ALJ considered the above-discussed factors in determining that Ms. Ledama is in fact "subject to a degree of functional restriction as a result of her physical impairments." *Id.* at 36. But the ALJ found Ms. Ledama to be less restricted than she claimed based on "significant inconsistencies in the records as a whole and a lack of objective findings to support the degree of restriction she alleges." *Id.* In his analysis, the ALJ considered records from multiple medical providers, noted that Ms. Ledama had undergone a "relatively routine and minimal course of treatment" which was "not consistent with the degree of limitation she alleges," and examined Ms. Ledama's daily activities. *Id.* at 36-42.

This Court has thoroughly reviewed the record and the ALJ's decision, and concludes that Ms. Ledama's contentions are unavailing.

Ms. Ledama is correct that the ALJ thoroughly discussed the objective medical evidence in evaluating her claim. But rather than using the objective medical evidence to summarily dismiss Ms. Ledama's diagnosis and its impact as she asserts, the ALJ considered the implications of the objective medical evidence in tandem with the daily-activity evidence to find that Ms. Ledama was not credible regarding the extent of her limitations. *Id.* at 36. The ALJ did not demand objective medical evidence that is not normally found or available in fibromyalgia cases. *But see* Pl.'s Mem. at 11-15 (arguing that the ALJ should not have looked to objective medical factors to determine the extent of Ms. Ledama's disability). To require objective medical proof of a fibromyalgia diagnosis as an absolute prerequisite for a finding of disability would be inappropriate. "It is well-settled that an ALJ may not disregard a claimant's subjective complaints of pain or other subjective symptoms solely because there is no objective medical evidence to support them." *Moraine v. Social Sec. Admin*, No. 08-CV-5982 (JRT/RLE) , 695 F. Supp. 2d 925, 957 (D. Minn. 2010). And the Court acknowledges that objective medical evidence may not be available to fully document the severity of a claimant's fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *5.

The ALJ's analysis instead focused, permissibly, on the objective medical evidence only insofar as it can provide insight into the severity of Ms. Ledama's impairments. Where a claimant alleges near-constant debilitating pain, it is reasonable to expect a claimant's resultant inactivity to correspond to a reduction in strength and muscle mass. *See Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (affirming ALJ denial of benefits where claimant was diagnosed with fibromyalgia but had normal muscle strength); *Ruffin v. Colvin*, No. 14-cv-26511 (KES), 2015 WL 5842340, at *6 (C.D. Cal. Oct. 6, 2016) ("If, however, a person claims that her fibromyalgia is so severe that it causes her to spend most of her life lying down, as Plaintiff testified in this case, then that person should exhibit some loss of muscle strength and atrophy."). The ALJ's analysis here repeatedly highlighted findings of normal muscle strength, normal gait, generally normal range of motion, and normal fine motors skills. AR at 30-33. And this Court's review of the record finds the same. *Id.* at 349, 368, 378, 382, 445, 496, 558, 564, 627, 630, 633, 637, 729. While "muscle atrophy, decreased range of motion, [and] muscle weakness" may not be symptoms of fibromyalgia itself, *Malloy v. Astrue*, 604 F. Supp. 2d 1247, 1249 (S.D. Iowa 2009), their presence or

absence sheds light on a claimant's alleged inactivity resulting from the pain of fibromyalgia. In this respect, the record undercuts Ms. Ledama's claims of significant limitations from near-constant debilitating pain.

Moreover, the ALJ carefully examined Ms. Ledama's stated treatment regimens and daily activities, which further undermine her claims regarding the extent of her limitations. First, her treatment records weaken her claim of disability. Specifically, the ALJ noted that though Ms. Ledama began physical therapy, she did not complete the recommended course. AR at 37; 413. The ALJ further discussed a gap in pain treatment for the better part of a year, which he found suspect given Ms. Ledama's claimed level of pain and disability. *Id.* at 38. This Court's review of the records demonstrates that Ms. Ledama did not seek treatment for pain or fibromyalgia from March 2014 through November 2014. *See generally id.* at 342-639, 690-727. As the ALJ concluded, had Ms. Ledama been experiencing the fully debilitating pain she describes, the Court would expect to see greater follow-through for physical therapy and pain management.

Second, Ms. Ledama's daily activities undercut her claims as to the severity of her disability. For example, though Ms. Ledama "reported ongoing severe headaches" and sought a chronic pain management program for neck pain, "she continued to drive up to 20 miles regularly," indicating "the ability to use the neck for an extensive range of motion, and to be able to concentrate and manage multitasking while managing the functions of a vehicle" in contradiction to her stated limitations. *Id.* at 37; *see also id.* at 266, 467. The ALJ provided a list of other activities that seemed to contradict reports of nearly constant eight-out-of-ten-ranked pain: he noted that Ms. Ledama continued to exercise at the YMCA, attended church, chose to homeschool her nine-year-old daughter, completed light housekeeping, and maintained substantial involvement in her daughter's activities. *Id.* at 41-42; *see also id.* at 264-68. The degree of activity involved in these undertakings, most notably homeschooling an active child, is inconsistent with being disabled by fibromyalgia. The record contains substantial evidence to support the ALJ's finding that Ms. Ledama's fibromyalgia does not result in the degree of limitation she asserts.

Finally, the ALJ "assigned great weight to the conclusions of the state agency medical consultants who reviewed the claimant's file at the initial and reconsideration levels." *Id.* at 38. Dr. Medina reviewed Ms. Ledama's SSI claim at the initial level and concluded that Ms. Ledama's "statements about the intensity, persistence, and

functionally limiting effects of the symptoms" were not "substantiated by the objective medical evidence alone. *Id.* at 123. Dr. Medina also reviewed Ms. Ledama's DIB claim at the initial level and reached the same conclusions. *Id.* at 134, 137. On reconsideration, Dr. Salmi offered a nearly identical opinion. *Id.* at 149, 164, 167. An ALJ can give greater weight to state agency medical consultants than to treating providers where the former find more support in and are consistent with the record as a whole. *See* SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."); *see also Davis v. Apfel*, 239 F.3d 962, 967-68 (affirming where ALJ gave greater weight to consulting physician than to treating physician because the record as a whole supported the former).

For these reasons, the Court concludes that the ALJ's consideration of objective medical evidence was not improper and that the record supports the ALJ's overall conclusion.

### B. Opinion Evidence

Ms. Ledama also contends that the ALJ "failed to evaluate properly the opinions of Wanda Andrews, P.A. and Gretchen Welshons, OTR/L." Pl.'s Mem. at 15. Specifically, she argues that the ALJ discussed the analyses of the two providers separately without noting their consistency with each other, and "the ALJ mistakenly believed the limitations from Ms. Andrews and Ms. Welshons were not supported by the objective evidence." *Id.* at 17-18. The Court is not persuaded.

**The Opinions**

Ms. Andrews is a nurse who provided care for Ms. Ledama approximately five times from December 2012 through March 2013, and once each in April, June, and September 2013. AR at 466-69, 479-80, 484; *see also* Pl.'s Mem. at 16. Of those eight appointments, two were unrelated to chronic pain, one did not involve any objective findings, and the remaining five noted a limited range of motion in Ms. Ledama's neck. AR at 466-69, 479-80, 484. After the first five of these encounters, Ms. Andrews wrote a letter noting Ms. Ledama's limited range of motion at the neck, extreme pain, and headaches. *Id.* at 419. She opined that "it is very apparent to [her] that without being able to drive, work at a computer, sit in one neck position for more

-8-

than a few minutes at a time, that [Ms. Ledama] is not capable of working a 40 hour week doing any type of work." *Id.*

The ALJ summarized Ms. Andrews's medical notes. *Id.* at 37, 40. He noted that while Ms. Andrews had a treating relationship with Ms. Ledama, "her objective findings on examinations during the claim period are minimal and limited to reduced range of motion of the cervical spine, which is accommodated in the residual functional capacity." *Id.* at 40. The ALJ further noted that Ms. Andrews "apparently relied quite heavily" on Ms. Ledama's subjective statements and largely accepted them as true despite "good reasons for questioning the reliability of the claimant's subjective complaints." *Id.* For these reasons and as a result of the inconsistencies with the record, the ALJ gave Ms. Andrews's conclusions little weight. *Id.* at 40-41. Finally, as noted above, the ALJ gave great weight instead to the state agency consultants. *Id.* The agency consultant who reviewed Ms. Ledama's SSI and DIB applications initially and on reconsideration found that Ms. Andrews's opinion "is without substantial support from other evidence of record." *Id.* at 126, 152.

Ms. Welshons is an occupational therapist to whom Ms. Ledama was referred by Ms. Andrews for one meeting. *Id.* at 540-43, 589-99. Ms. Welshons's evaluation found a decreased functional range of motion and decreased strength. *Id.* at 592. Ms. Welshons opined that Ms. Ledama "demonstrates a very limited ability for functional tasks" and that "her overall ability is very limited," noting that "[i]t is apparent that the client would have difficulty performing most activities of daily living." *Id.* Ms. Welshons further concluded that Ms. Ledama "would not have sufficient strength or endurance to work outside of her home." *Id.*

The ALJ described Ms. Welshons's notes as well. *Id.* at 39. He found that Ms. Welshons's conclusions "are not consistent with other treatment records from the same period." *Id.* He further noted that the evaluation was for the purpose of determining work-related limitations while Ms. Ledama actively sought disability benefits, which may have led to exaggeration. *Id.* at 40. And the ALJ observed that Ms. Welshons did not appear to have reviewed any other treating providers' findings. *Id.* Because of the above inconsistencies and "the subjective nature of the evaluation," the ALJ assigned little weight to Ms. Welshons's examination. *Id.*

**Ms. Ledama's Arguments**

The ALJ properly handled the opinion evidence. ALJs generally are required to consider all medical opinions they receive. 20 C.F.R. § 404.1527(c) (2017). The weight to which a medical opinion is entitled is based on a number of factors, including supportability and consistency. *Id.* Supportability looks to the volume of "relevant evidence to support a medical opinion, particularly medical signs and laboratory findings." *Id.* And "the more consistent a medical opinion is with the record as a whole, the more weight" ALJs give that opinion. *Id.* Here, the ALJ appropriately relied on these two factors when giving less weight to the opinions of Ms. Andrews and Ms. Welshons.

First, Ms. Ledama argues that the ALJ should have considered the consistency between the opinions of Ms. Andrews and Ms. Welshons. *Id.* at 17. But the ALJ is not required to consider the internal consistency of every opinion with every other opinion. Instead, the ALJ is required to consider the consistency of each medical opinion "with the record as a whole" to determine how much weight to give that opinion. 20 C.F.R. § 404.1527(c)(4). And as discussed above, the ALJ thoroughly considered the consistency of each opinion with the record as a whole. This argument is therefore unavailing.

Next, Ms. Ledama contends that the ALJ "mistakenly believed" that the opinions of Ms. Andrews and Ms. Welshons were unsupported by objective evidence. Pl.'s Mem. at 18. Ms. Ledama argues that "the ALJ failed to appreciate the significance of Ms. Ledama's fibromyalgia, a diagnosis supported by objective evidence." *Id.* As an initial matter, the ALJ indeed concluded that Ms. Ledama suffered from a severe impairment of fibromyalgia based on the objective trigger point test. AR at 23, 32.

To the extent Ms. Ledama argues that the ALJ discounted the opinions of Ms. Andrews and Ms. Welshons as a result of improper reliance on the lack of objective medical evidence to support Ms. Ledama's claimed limitations, the Court rejects the argument for the same reasons discussed in Part III.a above. As noted, the ALJ appropriately weighed Ms. Ledama's assertions of limitation against the lack of objective medical evidence supporting a reduction in strength and muscle mass as a result of a life of near-constant debilitating pain. And Ms. Andrews's and Ms. Welshons's opinions were inconsistent with the substantial evidence in the record

that Ms. Ledama's limitations were not as severe as she claimed. The ALJ properly gave them little weight as a result.

In further support of her argument, Ms. Ledama identifies facts in the record which could support the conclusions reached by Ms. Andrews and Ms. Welshons. Pl.'s Mem. at 18-19. In so doing, Ms. Ledama essentially asks this Court to reweigh the evidence. But the existence of evidence opposing the ALJ's findings does not require reversal. *See Mitchell*, 25 F.3d at 714. And, as discussed above, the Court finds substantial evidence in the record to support the ALJ's conclusion.

Because the ALJ properly considered the opinions of Ms. Andrews and Ms. Welshons in the context of the entire record, and because substantial evidence supports the ALJ's conclusions as to limitations notwithstanding the recommendations of those two sources, Ms. Ledama's arguments are unpersuasive. The Court therefore concludes that these arguments do not support reversal or remand.

### C. Conclusion

For the reasons discussed above, the Court concludes that the Commissioner's decision is supported by substantial evidence in the record as a whole and that the ALJ did not commit legal error. Accordingly, Ms. Ledama's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**, the Commissioner's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**, and the Commissioner's decision denying Ms. Ledama's benefits application is **AFFIRMED**.

**Let judgment be entered accordingly.**

Date: March 15, 2018

                                                        *s/ Katherine Menendez*
                                                        Katherine Menendez
                                                        United States Magistrate Judge